IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VOYAGEUR OUTWARD BOUND SCHOOL *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:18-cv-01463-TNM |
| v. | ) ) | |
| UNITED STATES *et al.*, | ) ) | |
| *Defendants.* | ) ) | |
| THE WILDERNESS SOCIETY *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:18-cv-01497-TNM |
| v. | ) ) | |
| RYAN ZINKE *et al.*, | ) ) | |
| *Defendants.* | ) ) | |
| FRIENDS OF THE BOUNDARY WATERS WILDERNESS | ) ) ) | Case No. 1:18-cv-01499-TNM |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| BUREAU OF LAND MANAGEMENT *et al.*, | ) ) | |
| *Defendants.* | ) ) ) | |

**PLAINTIFFS' JOINT REPLY BRIEF IN RESPONSE TO THE COURT'S ORDER FOR SUPPLEMENTAL BRIEFING**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

DISCUSSION .................................................................................................................................1

I.      As Defendants concede, Plaintiffs have standing to challenge the Bureau's action as exceeding the agency's authority. ................................................................................1

II.     Absent an error in the Bureau's final decision not to renew the leases, the Bureau had no authority to reverse that decision based solely on purported errors. ........................7

CONCLUSION ..............................................................................................................................13

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)            i

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ..................................................................................................3

*Am. Trucking Ass'ns v. Frisco Transp. Co.*,
   358 U.S. 133 (1958) ..............................................................................................9, 13

*Belville Min. Co. v. United States*,
   999 F.2d 989 (6th Cir. 1993) ..................................................................................12

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ..................................................................................................3

*Consolidated Rail Corp. v. Surface Transp. Bd.*,
   93 F.3d 793 (D.C. Cir. 1996) ..............................................................................9, 12

*Coteau Properties Co. v. Department of Interior*,
   53 F.3d 1466 (8th Cir. 1995) ................................................................................8, 9

*Dun & Bradstreet Corporation Foundation v. U.S. Postal Service*,
   946 F.2d 189 (2d Cir. 1991) .....................................................................................7

*International Paper Company v. Federal Energy Regulatory Commission*,
   737 F.2d 1159 (D.C. Cir. 1984) ..............................................................................13

*Koretoff v. Vilsack*,
   614 F.3d 532 (D.C. Cir. 2010) ..............................................................................2, 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................................................2

*McAllister v. United States*,
   3 Cl. Ct. 394 (1983) ................................................................................................12

*Merck & Co. v. United States Dep't of Health & Human Servs.*,
   385 F. Supp. 3d 81 (D.D.C. 2019) ..........................................................................10

*Perez v. Mortgage Bankers Association*,
   575 U.S. 92 (2015) ....................................................................................................8

*Safe Extensions, Inc. v. F.A.A.*,
   509 F.3d 593 (D.C. Cir. 2007) ............................................................................3, 12

*SEC v. Prudential Securities Incorporated*,
   136 F.3d 153 (D.C. Cir. 1998) ..................................................................................6

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)     ii

*Shalala v. Guernsey Memorial Hospital*,
    514 U.S. 87 (1995) ..................................................................................................................8

*Sierra Club v. Babbit*,
    65 F.3d 1502 (9th Cir. 1995) ...................................................................................................5

*Steenholdt v. F.A.A.*,
    314 F.3d 633 (D.C. Cir. 2003) .................................................................................................3

*United States v. Seatrain Lines*,
    329 U.S. 424 (1947) ...............................................................................................................10

**Statutes**

5 U.S.C. § 702 ................................................................................................................................2

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)         iii

# INTRODUCTION

The parties all agree on the answer to the first of the Court's two questions in its supplemental briefing order: Plaintiffs have standing on Count I of their respective complaints. The parties disagree only on the Court's second question—namely, whether the Court can determine the Bureau had inherent authority to reverse the 2016 Denial without examining the agency's purported basis for invoking that authority. Defendants and especially Defendant-Intervenors devote a significant amount of their briefs attempting to block review of the Plaintiff's arguments based on alleged waiver and impropriety. The heart of their answer to the Court's question, however, is that the Bureau was free to reinstate the expired leases, bypassing the regulatory procedures governing the issuance of new leases, based solely on the agency's position that it needed to correct a "legal error" that resulted in the 2016 Denial, *even if there was no error to correct*. This position not only defies logic, it runs counter to Supreme Court and D.C. Circuit precedent.

# DISCUSSION

**I.     As Defendants concede, Plaintiffs have standing to challenge the Bureau's action as exceeding the agency's authority.**

Defendants agree that Plaintiffs have standing on Count I. Doc. 79 at 3; Doc. 78 at 3. That is the correct answer to the Court's first question.

Defendants go on to assert incorrectly that, in answering the Court's question about standing on Count I, Plaintiffs improperly address "contract standing," Doc. 79 at 2 n.1, and "re-argu[e] plaintiffs' standing on counts II and III." Doc. 78 at 2. Indeed, Plaintiffs believe the Court need not consider third party prudential standing from the breach of contract context in order to rule in their favor on Count I, because no contract interpretation is necessary to conclude that the alleged errors are not the type susceptible to inherent error-correction authority and the

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          1

purported correction occurred too late.  Doc. 77 at 9-13.  However, Plaintiffs' supplemental brief properly addresses all issues Plaintiffs anticipated the Court or Defendants might view as relevant to standing on Count I, including the third party prudential standing doctrine that applies to the enforcement of contract rights, which Defendants previously raised with respect to Counts II and III.  *Id.* at 2-8.

While the Court need not consider third party prudential contract standing in relation to Count I, Doc. 77 at 6-8, Defendants' responses to Plaintiffs' argument on that subject fail in any event.  Defendant-Intervenors argue third party standing remains viable until the Supreme Court or D.C. Circuit explicitly disavows it.  Doc. 78 at 4 (referring to an argument on page 8 of their reply brief, Doc. 71).  However, federal district courts are bound by Supreme Court decisions, including the holding that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).  The D.C. Circuit has classified the third party standing doctrine that applies to actions enforcing contract rights as a prudential standing issue, which means that its continued viability remains questionable at best.

Regardless of whether the prudential third party contract standing doctrine survives *Lexmark*, it does not apply to Plaintiffs' claims because those claims arise under the Administrative Procedure Act (APA) and the statutes that protect the Plaintiffs' interests in the Boundary Waters and Superior National Forest, not from the leases themselves.  The "[APA] establishes a cause of action for those 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action.'" *Koretoff v. Vilsack*, 614 F.3d 532, 536 (D.C. Cir. 2010) (citing 5 U.S.C. § 702).  The right to review is "statutory" under the APA, entitling a plaintiff to judicial review of agency action unless another statute precludes review.  *Id.*

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)           2

Defendants' third party prudential contract standing argument thus topples under its own weight: there is nothing in the statutory scheme for lease renewal that precludes this Court's review. Consequently, Plaintiffs' claims are reviewable. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) (absent "specific language or specific legislative history that is a reliable indicator of congressional intent" to preclude review, agency actions are reviewable); *see also Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593, 601 (D.C. Cir. 2007) (the APA establishes a "strong presumption of reviewability," and "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.") (quoting *Steenholdt v. F.A.A.*, 314 F.3d 633, 638 (D.C. Cir. 2003), and *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other ground by Califano v. Sanders¸* 430 U.S. 99 (1977))).

By acknowledging that Plaintiffs have standing to press Count I under the APA, Doc. 79 at 3, Doc. 78 at 3, Defendants necessarily concede that for Article III purposes Plaintiffs are harmed by the 2018 Reversal and that their harms are redressable by a favorable decision in this case. Had the Bureau justified its 2018 Reversal on any basis other than the leases, there would be no question Plaintiffs could challenge that decision under the APA in conjunction with the Boundary Waters Canoe Area Wilderness Act, Federal Land Policy and Management Act, and 16 U.S.C. §508b. Yet, Defendants argue, without citing any cases rejecting APA claims or other kinds of statutory claims, the Bureau's mere reliance on the leases defeats Plaintiffs' standing. Doc. 79 at 2-3, Doc. 78 at 4-9. That argument is inconsistent with the APA's strong presumption of reviewability, which can only be overcome by Congressional action. *See Block*, 467 U.S. at 349; *Koretoff*, 614 F.3d at 536; *Safe Extensions*, 509 F.3d at 601. Indeed, Defendants' position would allow agencies to evade APA review at any time simply by claiming that an existing

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          3

contract with someone else bound them to act, no matter how arbitrary the action. *See also* Doc. 61 at 17-18 (describing the consequences of loosening restrictions on agencies' inherent error-correction authority).

Defendants' argument that Plaintiffs waived their APA claims by failing to brief the Bureau's statutory violations falters on the face of the briefing.  Doc. 79 at 2 n.1, Doc. 78 at 5-8. Plaintiffs have consistently argued that, by disavowing its discretion not to issue the 2018 Reversal, the Bureau circumvented statutory requirements to protect the Boundary Waters Wilderness and Superior National Forest that ultimately protect Plaintiffs' interests and would ordinarily apply to such a decision. Compl., *Friends of the Boundary Waters Wilderness v. BLM et al.*, Doc. 1 at 34-36, ¶¶115, 124; Compl., *The Wilderness Society et al. v. Zinke et al.*, Doc. 1 at 19, 21, ¶¶51, 60, 61; Compl., *Voyageur Outward Bound School et al. v. U.S. et al.*, Doc. 1 at 33, 35 ¶¶113, 124; Doc. 61 at 2 ("By unlawfully and arbitrarily disavowing its discretion to deny Twin Metals' renewal application, the Bureau short-circuited statutory obligations Congress imposed on both the Bureau and the Forest Service to protect the public interest and the valuable surface resources of the Boundary Waters Wilderness and the Superior National Forest."); *id.* at 24 (explaining that the Bureau's invocation of inherent authority skirts the Bureau's procedural requirements to issue new leases and the requirement to obtain Forest Service consent), *id.* at 37 (explaining that the Bureau's view of reinstatement as nondiscretionary improperly constrains the Bureau's and Forest Service's exercise of delegated sovereign power to regulate mining on federal lands); Doc. 69 at 3-4, 17-18, 29-30.  Defendants do not—and could not—dispute that the 2018 Reversal was based on the conclusion that the Bureau had no discretion not to renew the leases.  *See* Doc. 73 at BLM-000002.  Therefore, Defendants likewise could not dispute that, to the extent the Bureau's statutory obligations, including its obligation to obtain the Forest

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)   4

Service's consent, dictated the agency should not renew the leases, the 2018 Reversal treated those obligations as "legally inoperative." *Id*. Defendants instead focus on defending the Bureau's rationale for concluding it had no discretion to deny renewal. That rationale is based on the leases. *Id.* That is why the briefing focuses on the leases. That focus does not change the nature of Plaintiffs' claims, which seek to enforce the statutory obligations that protect Plaintiffs' concrete interests. In trying to shoehorn in standing law that applies to claims for breach of contract, Defendants misconstrue the basic nature of this APA case.

Defendants' attempt to distinguish the cases Plaintiffs cite that examined contract questions to adjudicate statutory claims brought by third parties is not persuasive. Defendant-Intervenors argue that the plaintiffs' claims in *Sierra Club v. Babbit* "had nothing to do with the terms or meaning of a contract between the federal government and a private entity" and that "[n]o interpretation of a contract was necessary." Doc. 78 at 8. To the contrary, similar to this case, a central question in *Sierra Club* was whether the agency's contract with a private party so constrained its discretion that the agency did not need to apply the Endangered Species Act and National Environmental Policy Act when acting in connection with the contract. 65 F.3d 1502, 1508, 1512 (9th Cir. 1995). The answer there was yes, because unlike the leases here, that contract constrained the agency's discretion in "clear and explicit terms." *Id.* at 1508 n.8.

Defendant-Intervenors suggest *AT&T Communications, Incorporated v. WilTel, Incorporated* and *Ian, Evan & Alexander Corporation v. United States* are inapposite because there is a separate statutory and regulatory scheme at play in those cases. Doc. 78 at 9. Contrary to Defendant-Intervenors' misguided characterization, what those cases establish is straightforward: there are well-known circumstances in which a third party to a contract has standing to bring a statutory claim that turns on the interpretation of that contract.

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)    5

Defendants, on the other hand, put forward no case holding third parties lack standing to bring statutory claims simply because those claims require interpretation of a government contract to which they are not a party.  Instead they offer *SEC v. Prudential Securities Incorporated*, which involved common law claims.  Doc. 78 at 5.  However, as Plaintiffs explained in their reply brief, *SEC* is inapposite because there the would-be intervenors sought to enforce a consent decree to which they were not a party, stemming from statutory claims for which they had no standing, through a breach of contract action based only on the defendant's alleged promise to intervenors to abide by the consent decree.  136 F.3d 153, 160 (D.C. Cir. 1998); Doc. 69 at 4 ("*Deutsche Bank* and the other cases Defendants cite establish rules for claims by third parties to enforce rights under contract that purportedly arise from the contract or from principles of contract law . . . [t]hey are not relevant here, as Plaintiffs are not claiming third-party rights under the leases.").  Specifically, intervenors there argued that even if they could not sue to enforce a consent decree to which they were not a party, they could sue to enforce an alleged contractual pledge to comply with the consent decree, or because a party to the consent decree defrauded intervenors by representing it would comply with the consent decree.  136 F.3d at 160.  In other words, all of the claims turned on and were inextricably intertwined with the claim that the consent decree had been violated—a claim the intervenors lacked standing to bring.  *Id.*  Here, the Bureau violated the statutes that protect Plaintiffs' interest by incorrectly concluding it had no discretion to apply them.  This case only requires the Court to interpret the leases because they are the basis of the Bureau's position that its action was lawful.

To be clear, Plaintiffs rebut Defendants' responses regarding third party prudential contract standing for the sake of thoroughness and because Defendant-Intervenors frame their

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    6

responses as a further attack on Plaintiffs' standing on Counts II and III, but as stated above, all parties agree Plaintiffs have standing on Count I.

## II. Absent an error in the Bureau's final decision not to renew the leases, the Bureau had no authority to reverse that decision based solely on purported errors.

The Bureau may not rely on its implied or inherent authority to correct an error that does not exist. Doc. 77 at 11-13.[1] Defendants dispute this, arguing that the Bureau has a broad inherent "authority to reconsider" all its decisions as long as the reconsideration is timely and does not circumvent Congressionally-prescribed procedures. Doc. 79 at 3; Doc. 78 at 10. As Plaintiffs have explained, there is no such broad inherent authority for agencies to reverse their final decisions. To the contrary, an agency's limited authority to correct its errors is a narrow exception to the finality of agency decisions. In the case of final decisions reversed without express statutory or regulatory authority, agencies have only limited implied authority to correct ministerial or clerical errors or those that result from a clear oversight or omission (ministerial or substantive)—and even then, they must exercise the authority in a timely manner.[2] Doc. 61 at 19-26; Doc. 69 at 6-20. In the absence of an error or if the alleged error is more complex than a mere oversight, agencies can only implement a change of heart through procedures conferred by statute or regulation, such as the Bureau's option here to initiate a new leasing process. Doc. 61 at 22-23; Doc. 69 at 18-20.

---

[1] Defendant-Intervenors say Plaintiffs waived this argument, too, even though the Court expressly requested Plaintiffs address it. Doc. 78 at 11 & n.5; Doc. 76. They are wrong. If there was no error to correct, the decision necessarily would implement a policy change, which, as Plaintiffs previously explained, is an impermissible use of the implied error-correction authority. *See*, *e.g.*, Doc. 61 at 22-23.

[2] Despite the superficially broad language Federal Defendants quote from *Dun & Bradstreet Corporation Foundation v. U.S. Postal Service*, Doc. 79 at 3 n.2, the case is not to the contrary; it upholds reconsideration to correct an oversight. 946 F.2d 189, 192 (2d Cir. 1991).

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          7

Defendants cite to cases that Plaintiffs have already explained are consistent with these limitations on inherent error-correction authority. Doc. 69 at 6-20. *Perez v. Mortgage Bankers Association*, which Federal Defendants cite for the first time, Doc. 79 at 3-4 n.2, is also consistent. That case merely precludes courts from requiring agencies to follow APA notice and comment procedures when they reverse interpretive rules that, unlike the 2016 Denial, "do not have the force and effect of law." 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)); *see also id.* at 100 (explaining that the APA expressly and categorically exempts interpretive rules from the notice and comment requirement). The language that Federal Defendants quote from *Perez* is no help to them. While the Bureau is "free to fashion [its] own rules of procedure" consistent with its authorizing statutes, Doc. 79 at 3-4 n.2, it is not free to circumvent those rules by relying on inherent error-correction authority when the alleged error does not exist or does not fall within the limitations of that authority. Yet, that is precisely what the Bureau did when it bypassed the rules that establish procedures for issuing new leases.

Defendant-Intervenors' belated attempt to address *Coteau Properties Co. v. Department of Interior*, which Plaintiffs cited in their opening brief, Doc. 61 at 22, and Defendant-Intervenors did not address in either of their previous briefs, is also not persuasive. They emphasize that the agency in that case had authority to review state determinations, suggesting authority was not at issue. Doc. 78 at 17. However, the relevant question in *Coteau* was not whether the agency could review state determinations but whether the new agency director had authority to withdraw and replace the previous director's final decision reviewing the state's determination. 53 F.3d 1466, 1478 (8th Cir. 1995). The court found that the agency's proffered error-correction rationale did not support the reversal and that in fact, the director had decided to

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                   8

withdraw the well-reasoned prior decision in light of changing policies. *Id.* at 1478-79 (not using the word "authority" but citing *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958) (regarding agency "power to correct inadvertent ministerial errors")); *see also Consolidated Rail Corp. v. Surface Transp. Bd.*, 93 F.3d 793, 801 (D.C. Cir. 1996) (applying the rule from *American Trucking Associations* and describing the issue as one of authority).

Even if the unfettered reversal authority Defendants hypothesize existed, it would have no application here because the Bureau justified its 2018 Reversal solely by reference to alleged "legal error" in the basis for the 2016 Denial. Doc. 73 at BLM-000002. No matter how vigorously they try, Defendants cannot now—in the midst of litigation—reinvent the Bureau's basis for the final action at issue. Where, as here, an agency claims it reversed a final decision in order to correct errors in that decision, the absence of error in the final decision is fatal to the agency's invocation of authority. To hold otherwise would allow the Bureau to reverse final decisions under the auspices of error correction for any reason—including policy reasons—contrary to the D.C. Circuit's holding in *Consolidated Rail Corporation*. 93 F.3d at 801 ("[T]he power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful." (quoting *Am. Trucking Ass'ns*, 358 U.S. at 146)).

Defendants argue that whether an error occurred goes to the merits of the 2018 Reversal, not to whether the agency had authority to reverse the 2016 Denial. Doc. 78 at 12; Doc. 79 at 5-6. Defendants are wrong, first, because an issue can go to both merits and authority. Regardless, cases rejecting an agency's reliance on error-correction authority where there was no error have addressed the issue as a matter of authority. *See Consol. Rail Corp.*, 93 F.3d at 793 (holding there was no inherent authority to reopen proceedings because the court could not credit

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated) 9

the alleged errors); *United States v. Seatrain Lines*, 329 U.S. 424, 431-33 (1947) (where there was no inadvertent error to correct, the agency "was without authority to revoke" its prior decision). This makes sense; courts must often examine the content of an agency action to determine whether that action exceeds the agency's authority. *See, e.g., Merck & Co. v. United States Dep't of Health & Human Servs.*, 385 F. Supp. 3d 81, 92-93 (D.D.C. 2019).

Defendants say Plaintiffs' argument puts agencies in the impossible situation of conducting reconsideration without knowing whether they have authority to do so because they will not know at the outset whether there is an error. Doc. 79 at 5-6; Doc. 78 at 14. However, in the typical case, an error stemming from an oversight, omission, or clerical mistake that can be remedied using inherent error-correction authority will be easy to identify. Doc. 69 at 14-15. To the extent an agency disagrees with its prior final decision for more complicated reasons, that agency must rely on procedures established by statute or regulation to adopt a new approach. *Id.* Here, the Bureau could have initiated a new lease process pursuant to its regulations, but instead opted to invoke its implied error-correction authority to reverse the 2016 Denial, bypassing all procedural safeguards. It is because of that choice that the Court cannot uphold the Bureau's claimed authority without confirming that the 2016 Denial was, in fact, erroneous.

Federal Defendants argue the Bureau was justified in correcting its 2016 Denial based on an error in the First M-Opinion's interpretation of the 1989 leases. Doc. 79 at 7. That argument goes too far. The relevant question is whether the decision the Bureau *actually reversed* was issued in error. That is the 2016 Denial, which was based not on all of the discussion contained in the First M-Opinion but rather on that opinion's conclusion that the Bureau had discretion to deny renewal because the lessee has never begun production. Doc. 73 at BLM-000346. Thus, the Bureau would have authority to correct the 2016 Denial only if the First M-Opinion's

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)        10

ultimate conclusion was erroneous, which it was not. The First M-Opinion's conclusion was based on the well-established meaning of the renewal terms in the 2004 leases, and in the alternative on the 1966 leases that Twin Metals argued were controlling. *Id.* at BLM-000765, BLM-000767. The First M-Opinion's views on the 1989 leases are not relevant, did not become part of the 2016 Denial, and cannot give rise to inherent error-correction authority. For the reasons Plaintiffs explained in their earlier briefs, Federal Defendants also fail to show the First M-Opinion was vulnerable to legal challenge. Doc. 61 at 26-49; Doc. 69 at 20-52.

There has been no argument by Defendants that the First M-Opinion, or the ensuing 2016 Denial, was the result of a clerical or ministerial mistake. Thus, to invoke the agency's inherent error correction authority, the agency would have had to point to some evidence that the agencies did not consider in issuing these decisions. Federal Defendants have asserted in general terms, as does the Second M-Opinion, that the First-M-Opinion failed to consider evidence of the parties' intent. Doc. 79 at 6; Doc. 72 at 18; Doc. 73 at BLM-000062 n.38. But these are bald assertions that do not identify any specific overlooked document. The assertions, furthermore, are belied by the First M-Opinion itself, Doc. 73 at BLM-000765-66 (discussing the parties' intent), and by the Solicitor's assurance that she considered all of Twin Metals' arguments. *Id.* at BLM-000608. Failing to adopt Defendants' view of the evidence is not the same as failing to consider it. Throughout all of the briefing in this case, no Defendant has pointed to any specific piece of evidence that was not before the Solicitor who issued the First M-Opinion, much less dispositive evidence. There is none.

Defendants argue that the language the Court cites from *Belville Mining Company v. United States* and *McAllister v. United States* supports their position that an agency can invoke inherent error-correction authority to reverse final decisions in the absence of an error, as long as

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)    11

no one has relied on it.  Doc. 79 at 4-5; Doc. 78 at 14-15.  As Plaintiffs noted in their supplemental brief, however, while the facts of those cases are consistent with the D.C. Circuit framework, the language quoted is not.  Doc. 77 at 10 n.2.  Defendants effectively concede this, because they admit the D.C. Circuit requires agencies to correct errors in a timely manner, Doc. 66 at 46, Doc. 65 at 22, while the language from *McAllister* suggests agencies can correct true errors in final decisions at any time.  *See Belville Min. Co. v. United States*, 999 F.2d 989, 999 (6th Cir. 1993) (quoting *McAllister v. United States*, 3 Cl. Ct. 394, 398 (1983)).  Likewise, in the D.C. Circuit, the absence of reliance does not free an agency to use inherent error-correction authority to reverse non-erroneous decisions.  *See Consolidated Rail Corp.*, 93 F.3d at 799-801 (concluding that the agency lacked authority to correct a nonexistent error without discussing reliance interests).  In any case, Plaintiffs did rely on the 2016 Denial, Doc. 77 at 13 n.7, and Federal Defendants are wrong to suggest the mere pendency of a lawsuit renders the public's reliance on a final government decision unreasonable.  *Contra* Doc. 79 at 5 n.4.

Defendant-Intervenors argue Plaintiffs must be wrong that inherent error-correction authority depends on the presence of an actual error because here the Court cannot determine whether an error occurred without examining the leases.  Doc. 78 at 13-14.  But contrary to their argument, applying this commonsense limitation on error-correction authority does not "circumvent standing limitations."  *Id.*  It only highlights that shoehorning the prudential standing limitation from the breach of contract context into the APA framework would have absurd consequences, creating a broad loophole for agencies seeking to avoid APA requirements.  In a claim for which all parties agree Plaintiffs have standing, the mere relevance of the leases would act as a poison pill, thwarting Congress's intent to provide broad review of agency decisions.  *See Safe Extensions*, 509 F.3d at 601.

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                12

In the alternative, Defendant-Intervenors assert the Court must apply a deferential reasonableness standard in determining whether any error occurred.  Doc. 78 at 15-16.  Citing *McAllister*, Federal Defendants make a similar argument that agencies need only provide something more than a "mere allegation of error."  Doc. 79 at 5.  Defendants' arguments are inconsistent with the searching review conducted and discussed in *International Paper Company v. Federal Energy Regulatory Commission*, 737 F.2d 1159, 1162-66 (D.C. Cir. 1984), and in *American Trucking Associations*, 358 U.S. at 137-39.  Such deference is unnecessary in this context, because implied error-correction authority is limited to the types of errors that should be relatively easy for agencies to show.  Doc. 69 at 14-15.

## CONCLUSION

For the foregoing reasons, (1) Plaintiffs have standing on Count I of their respective Complaints, and (2) the Court must find there was an error in the 2016 Denial in order to uphold the agency's 2018 Reversal.

Respectfully submitted this 7th day of February, 2020,

        *s/ Erin Whalen*
        *s/ Eric Jorgensen*
        Erin Whalen (AK Bar No. 1508067) (admitted *pro hac vice*)
        Eric P. Jorgensen (DC Bar No. 88897)
        EARTHJUSTICE
        325 Fourth Street
        Juneau, AK 99801
        T: 907.586.2751
        E: ewhalen@earthjustice.org
        E: ejorgensen@earthjustice.org

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)    13

Janette K. Brimmer (admitted *pro hac vice*)
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA 98104
T: 206.343.1029
E: jbrimmer@earthjustice.org

*Attorneys for Plaintiffs The Wilderness Society, Izaak Walton League of America, and Center for Biological Diversity in Case No. 1:18-cv-01496-TNM*

*s/ Dustin C. Elliott*
_____
Joseph Alexander Ward (DC Bar No. 463927)
Dustin C. Elliott (DC Bar No. 1032601)
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888
Telephone: 202.887.1500

Thomas B. Heffelfinger (admitted *pro hac vice*)
Amy S. Conners (admitted *pro hac vice*)
BEST & FLANAGAN LLP
60 South Sixth Street
Suite 2700
Minneapolis, MN 55402
Telephone: 612.339.7121

*Attorneys for Plaintiffs Voyageur Outward Bound School, Piragis Northwoods Company, Inc., Ely Outfitting Company & Boundary Waters Guide Service, Wenonah Canoe Inc., Northstar Canoe, Sawbill Canoe Outfitters, Inc., Hungary Jack Outfitters, Women's Wilderness Discovery, River Point Resort and Outfitting Company, and Northeastern Minnesotans for Wilderness in Case No. 1:18-cv-01463-TNM*

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)    14

*s/ Ari B. Lukoff*
Richard B. Allyn (MN # 0001338) (admitted *pro hac vice*)
Stephen P. Safranski (MN #0331326) (admitted *pro hac vice*)
Ari B. Lukoff (MN #0390025) (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel.: (612)349-8500
Fax: (612)339-4181
RAllyn@robinskaplan.com
SSafranski@robinskaplan.com
ALukoff@robinskaplan.com

*s/ Meegan F. Hollywood*
Meegan F. Hollywood (Dist. D.C. Bar No. NY0206)
ROBINS KAPLAN LLP
399 Park Avenue
Suite 3600
New York, NY 10022
Tel.: (212)980-7400
Fax: (212)980-7499
MHollywood@robinskaplan.com

*Attorneys for Plaintiff Friends of the Boundary Waters Wilderness in Case No. 1:18-cv-01499-TNM*

PLS' JOINT SUPPL. REPLY
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)   15