**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| VOYAGEUR OUTWARD BOUND SCHOOL *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:18-cv-01463-TNM |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| THE WILDERNESS SOCIETY *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:18-cv-01497-TNM |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN ZINKE *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| FRIENDS OF THE BOUNDARY WATERS WILDERNESS, | ) | |
| | ) | Case No. 1:18-cv-01499-TNM |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BUREAU OF LAND MANAGEMENT *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' JOINT MOTION FOR RELIEF FROM JUDGMENT DUE TO
NEWLY DISCOVERED EVIDENCE**

## INTRODUCTION

This Court's grant of summary judgment for Defendants and Defendant-Intervenors, concluding that the Bureau of Land Management's decision to reinstate two expired mining leases was a proper exercise of authority, rested on its conclusion that there was "no evidence that establishes this reversal was policy-based." *Voyageur Outward Bound Sch. v. United States*, 444 F. Supp. 3d 182, 196–97 (D.D.C. 2020) ("Op."). Since the entry of the judgment, and after the time for seeking a new trial under Rule 59 expired, Plaintiffs have identified new documents showing that, in fact, the Bureau's decision followed an intense campaign of political pressure by those who were determined to see the proposed mine proceed as part of a policy preference in favor of mining on the leased land and for the lease renewals to be granted automatically without any exercise of discretion. These documents relate to a key determination in the Court's summary judgment order—that there was no evidence the agency's decision was driven in significant part by policy rather than mere error correction. The documents were not before the Court when it made its decision, despite Plaintiffs' diligent requests that Defendants include such documents in the record, and they provide essential information regarding a dispositive issue in the Court's judgment. Relief from the judgment is therefore appropriate under Rule 60(b) of the Federal Rules of Civil Procedure.

## BACKGROUND

I.      **The Bureau's Reversal and Reinstatement of Two Mining Leases on the Edge of a Million-Plus-Acre Protected Wilderness in Northern Minnesota.**

This case involves the reinstatement of two mineral leases on the edge of the Boundary Waters Canoe Area Wilderness ("Boundary Waters"), a 1.1 million acre protected wilderness area that is part of Superior National Forest in northern Minnesota. The leases were originally

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)      2

issued in 1966 with a twenty-year primary term, and were renewed for 10-year terms in 1989 and 2004. BLM-003603–04 (section 1); BLM-002753-56; BLM-002553-57.

> **A.    In 2016, the Bureau Denied the Lessee's Application to Renew the Leases Because the Leases Provided Only a Discretionary Right to Renew and the Forest Service Declined to Consent to Renewal.**

The lease owner submitted an application to the Bureau of Land Management (the "Bureau") for a third ten-year renewal in 2012. BLM-000760. The Bureau sought the advice of the Solicitor of the Department of the Interior ("Interior") as to whether Twin Metals was entitled to mandatory renewal. Solicitor of the Interior Tompkins issued a formal opinion (the "Tompkins M-Opinion") in March 2016 that interpreted the leases as providing the Bureau discretion to grant or deny renewal of the leases. BLM-000760-72.

In accordance with the statutory scheme, the Bureau consulted the United States Forest Service ("Forest Service"), asking whether the Forest Service would consent to a discretionary renewal. *See* 5 U.S.C. App 1; 16 U.S.C. § 508b.[1] After soliciting public input and holding two public listening sessions, the Forest Service denied consent in a 21-page explanatory letter with a

---

[1] The statutes that empower the Bureau to issue these mineral leases require the Secretary of Agriculture's consent, which has been delegated to the United States Forest Service. 5 U.S.C. App 1 (Reorganization Plan No. 3 of 1946, § 402) provides:

> [M]ineral development on such lands shall be authorized by the Secretary of the Interior only when he is advised by the Secretary of Agriculture that such development will not interfere with the primary purposes for which the land was acquired and only in accordance with such conditions as may be specified by the Secretary of Agriculture in order to protect such purposes.

16 U.S.C. § 508b is specific to National Forests in Minnesota, and provides:

> the Secretary of the Interior is authorized, under general regulations to be prescribed by him and upon such terms and for specified periods or otherwise as he may deem to be for the best interests of the United States, to permit the prospecting for and the development and utilization of such mineral resources: *Provided*, That the development and utilization of such mineral deposits shall not be permitted by the Secretary of the Interior except with the consent of the Secretary of Agriculture (emphasis in original).

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    3

seven-page bibliography. BLM-004795-822. The Forest Service had determined that the risk of

acid mine drainage, impacts on fish and wildlife habitat, and other environmental impacts were

too great and that consenting to renewal of the mineral leases would be inconsistent with the

Forest Service's obligation to maintain the wilderness character and environmental quality of the

Boundary Waters. BLM-004814. The Bureau issued a final agency action on December 15,

2016, denying renewal of the leases and rejecting the lease renewal applications (the "2017

Renewal Rejection"). This action resulted in immediate expiration of the leases. BLM-000347;

43 C.F.R. § 3514.25 (for hardrock mineral leases, "[i]f you file a timely application for lease

renewal under § 3511.27 of this part, your lease expires on the expiration date or the date [the

Bureau] rejected your application, whichever is later."). Concurrently, the Forest Service

submitted a mineral withdrawal application to withdraw 234,328 acres of land within Superior

National Forest from future mineral leases. *See* 82 Fed. Reg. 6639 (Jan. 19, 2017).

**B.      In May 2018, the Deputy Solicitor of the Interior Reinterpreted the Leases, and the Bureau Reinstated the Leases.**

On May 2, 2018, the Bureau reinstated the 2004 leases and Twin Metals' 2012 renewal

application (the "2018 Reversal"). BLM-000001-03. The Bureau's 2018 Reversal relied on a

December 22, 2017, legal opinion issued by the Principal Deputy Solicitor of the Interior (the

"Jorjani M-Opinion"). The Jorjani M-Opinion concluded that Twin Metals had a right to a

renewal of the leases and that the right to renewal was mandatory, not discretionary. BLM-

000055.

Relying on the Jorjani M-Opinion, the Bureau determined that its previous request for
Forest Service consent to renew the leases was "based on the legal error that the United States
had discretion to decide whether to renew the leases." BLM-000002. As a result, the Bureau
stated that the Forest Service's December 2016 non-consent determination was "not legally
operative." BLM-000002. Accordingly, the Bureau disregarded the Forest Service's lack of
consent and reinstated the lease applications. *See* BLM-000002.

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)        4

II.    **Procedural History of This Lawsuit.**

A.    **Plaintiffs' Claims Challenging the 2018 Reversal.**

Plaintiffs filed three lawsuits in June, 2018 challenging the 2018 Reversal and the Jorjani M-Opinion: *Voyageur Outward Bound School et al. v. United States et al.*, No. 1:18-cv-01463-TNM; *The Wilderness Society et al. v. Zinke et al.*, No. 1:18-cv-01496-TNM; and *Friends of the Boundary Waters Wilderness v. Bureau of Land Management*, No. 1:18-cv-01499-TNM. The assignee of the leases, Franconia Minerals (US) LLC, and its parent corporation Twin Metals Minnesota LLC (collectively, "Twin Metals") intervened in each of the three cases as Intervenor-Defendants. (June 28, 2018 Minute Orders.) The cases were consolidated into case no. 1:18-cv-01463-TNM on July 25, 2018. (July 25, 2018 Minute Orders.)

Plaintiffs' Complaints sought relief on two independent grounds. Plaintiffs alleged that the Bureau lacked authority to reinstate the leases in the 2018 Reversal. (No. 1:18-cv-01463-TNM, Dkt. 1, Count 1; No. 1:18-cv-01496-TNM, Dkt. 1, Count 1; No. 1:18-cv-01499-TNM, Count 1.) Plaintiffs also claimed that the Jorjani M-Opinion was arbitrary, capricious, and contrary to law. (No. 1:18-cv-01463-TNM, Dkt. 1, Count 2; No. 1:18-cv-01496-TNM, Dkt. 1, Count 2; No. 1:18-cv-01499-TNM, Count 2.)

B.    **Plaintiffs' Motion to Compel**

On March 1, 2019, Plaintiffs filed a Joint Motion to Compel Completion of the Administrative Record, seeking inclusion of documents that were obtained by a third party under the Freedom of Information Act ("FOIA"). (Dkt. 56-1 at 1.) The Court denied that motion, citing the presumption that the administrative record was accurately designated. (Dkt. 60 at 1.)

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          5

C.      **The Court's Summary Judgment Opinion.**

The parties filed cross-motions for summary judgment. (Dkt. 61, 64, 67.) On March 17, 2020, the Court granted Federal Defendants' and Twin Metals' motions for summary judgment, denied Plaintiffs' motion for summary judgment, and denied Twin Metals' motion to dismiss for lack of standing. Op. at 31. In addressing Plaintiffs' contention that the Bureau lacked inherent authority to issue the 2018 Reversal, the Court acknowledged that "[o]f course, agencies may not use error correction 'as a guise for changing previous decisions' based on policy preferences." Op. at 18 (citing *Am. Trucking Ass'n, Inc. v. FRISCO*, 358 U.S. 133, 146 (1958)). The Court noted that a showing that the 2018 Reversal was the result of policy preferences might make the reversal unlawful. But based on the record before it, the Court found "no evidence that establishes this reversal was policy-based." Op. at 18. Instead, the Court concluded, Plaintiffs "relie[d] solely on inferences." Op. at 18.

Plaintiffs filed notices of appeal on April 17, 2020. (Case No. 18-cv-01496, Dkt. 83.)

D.      **New Evidence Emerges Demonstrating the 2018 Reversal Was Policy-Based.**

After the March, 2020, entry of judgment, Plaintiffs learned that in response to FOIA requests, Interior had produced troves of documents to unaffiliated third parties, some of which relate to the 2018 Reversal and were before the agency at the time of the 2018 Reversal, but were not included in the administrative record for this case. The documents were previously unknown to Plaintiffs and their counsel. (Declaration of Joseph Alexander Ward In Support of Plaintiffs' Motion for Relief From Judgement Due to Newly Discovered Evidence ("Ward Decl.") ¶¶ 2-7.) As described further below, the documents demonstrate that almost immediately after President Trump was inaugurated, Twin Metals and Members of Congress launched a campaign of policy-based pressure to undo the 2016 Renewal Rejection, and are evidence that the 2018 Reversal was

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                6

the result of a policy-driven decision to promote mining on Twin Metals' leases and the surrounding area. These documents compel a conclusion that Interior's rationale for the 2018 Reversal, a purported "legal error," was a "'guise for changing previous decisions' based on policy preferences." Op. at 18 (quoting *Am. Trucking Ass'ns, Inc.*, 358 U.S. at 146).

In March 2017, shortly after President Trump was inaugurated, Twin Metals began lobbying newly installed Interior staff to reverse the Tompkins M-Opinion and 2017 Renewal Rejection. Ex. A; Ex. F.[2] In advance of a March conversation with the Special Assistant/Acting Director for Interior's Office of Congressional & Legislative Affairs, Twin Metals' lobbyist from the law firm WilmerHale, which represents Twin Metals in this case, forwarded a "fact sheet" asking the new Secretaries of Interior and Agriculture[3] to immediately suspend and withdraw the Tompkins M-Opinion and Forest Service mineral withdrawal application, respectively, "because they involve expenditure of significant Department resources in the near term and have broad ***policy*** impacts on jobs, the economy, and the recovery of strategic national resources." Ex. A (emphasis added). The email included a list of four unrelated Solicitor's M-Opinions that had already been suspended by the acting Secretary for the new administration. *Id.* Following the call, Twin Metals' lobbyist forwarded a letter from Representative Emmer of Minnesota to Interior Secretary Zinke that advocated for him to "reject" the Tompkins M-Opinion as being inconsistent with statute (a patently incorrect argument that Interior never adopted in the later Jorjani Opinion.) Ex. B.

---

[2] Exhibits E and F are emails with attachments. Page 4 of Exhibit E and pages 3-17 and 19-23 of Exhibit F are attachments that are already in the existing administrative record. Plaintiffs include them in these exhibits to provide the full context for the new evidence.

[3] Secretary Ryan Zinke was confirmed by the Senate on March 1, 2017, and Secretary Sonny Perdue was confirmed on April 24, 2017.

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          7

Within days, Representative Emmer's staff sent the same letter again directly, asking for a meeting "to discuss options on how we might be able to address" the leases and withdrawal. Ex. C at 1. An April meeting was then arranged between Representatives Emmer and Nolan and Secretary Zinke. Ex. D at 1. Interior staff commented in a March 30 email that by the time Representative Nolan's staff requested a meeting, the agency "had already been working on the issue with [Representative Emmer]." Ex. D at 3.

In April 2017, Twin Metals began seeking an early May meeting between Secretary Zinke and Antofagasta's CEO, repeatedly emphasizing the project's asserted economic benefits. Ex. E; Ex. F. Twin Metals' attorney spoke with Interior again on April 24, 2017, sending as a follow-up the company's written critique of the Tompkins M-Opinion, which characterized the opinion as "both legally erroneous and predicated on a fundamental misunderstanding of the policy considerations and factual background." Ex. F at 19; *see id.* at 21 (arguing, "The Opinion does not account for . . . ***crucial policy context***." (emphasis added)).

This pressure culminated in an April 2017 memorandum for the Interior Secretary detailing "Options for Reversal of BLM's Rejection of Twin Metals Minnesota's Lease Renewal Application and Solicitor's M-Opinion 37036."[4] The majority of that memorandum is redacted, but, presumably, reversing the Tompkins M-Opinion and 2017 Renewal Rejection based on a supposed legal error was only one of the options under consideration.

In August, 2017, Representative Emmer was working on draft legislation that he sought "technical assistance" from Interior on. Ex. I. The legislation would further the pro-mining

---

[4] Plaintiffs requested that this memorandum (Dkt. 56-12) be included in the Administrative Record. Dkt. 56. The Court denied Plaintiffs' motion to complete the administrative record. Dkt. 60.  The new documents presented here place the memorandum in context and further illuminate its significance.

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          8

policy goals of prohibiting withdrawal of minerals in Minnesota without Congressional approval and potentially make lease renewals "automatic in Minnesota if the company applies." *Id*. In an email to Interior, Representative Gosar's advisor suggested that the proposed lease renewal policy was "trying to address" the rejection of Twin Metals' lease renewal application and make such renewals mandatory. *See id*. ("The lease issue we currently have and are trying to address is Tidwell recommended the leases not be renewed and then BLM rejected the leases. They had been renewed twice previously.")

Later that year and about two months before Interior reversed the Tompkins M-Opinion, members of the Congressional Western Caucus, including Representatives Gosar and Emmer, met with officials in the Secretary of the Interior's office and the Executive Office of the President. Ex. G. Jeff Small, Executive Director for the caucus, followed up by email after the meeting. *Id*. He summarized the caucus' asks, which included "[a] reversal of the [Tompkins] M-Opinion thereby reaffirming that the [Bureau] never had the discretion to deny renewal of Twin Metals leases [sic], and the Forest Service never had the discretion to deny its consent to the renewal." *Id.* at 1. He complained that "[w]e are now almost 11 months in to the Administration and the company has yet to receive a positive signal from the Administration." *Id.* at 2. To reinforce the political pressure, Small told the Secretary of the Interior's office, "Twin Metals has already dumped more than $400 million into this project"; "The project is in Nolan's District. He has been helpful and is now on our side. However the longer this drags out the more he will get out of a win."; and "Congressman Emmer and Gosar are starting to get very worked up." *Id.* (emphasis added).

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)     9

Finally, the documents reveal that Interior Solicitor's office staff expressly requested "***policy direction***" on the Jorjani M-Opinion from the Principal Deputy Solicitor, though redactions conceal the precise topic of the request. Ex. H (emphasis added).

Collectively, these documents establish that the 2018 Reversal was not prompted by any internal process in the ordinary course to correct a basic legal error in the interpretation of the leases, but by a shift in policy after Congressional Representatives and the mining company pressured the new administration about the alleged importance of the mine proposal.

## JURISDICTION

Because "the filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal,'" the district court has jurisdiction only to deny but not to grant a Rule 60 motion. *Piper v. U.S. Dep't of Justice*, 374 F. Supp. 2d 73, 77 (D.D.C. 2005) (quoting *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997)). However, "the District Court may consider the 60(b) motion, and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted." *Id.* (quoting *LaRouche v. U.S. Dep't of Treasury*, 112 F. Supp. 2d 48, 52 (D.D.C. 2000)). Thus, Plaintiffs request that the Court indicate its inclination to grant this Rule 60(b) motion, so that Plaintiffs may request a remand from the Court of Appeals so this motion can be granted.

## ARGUMENT

The Court's determination that the Bureau had authority to issue the 2018 Reversal hinged on a critical conclusion: that there was no evidence policy preferences motivated the Bureau's exercise of its reconsideration authority. Otherwise, the Court might have invalidated the Jorjani M-Opinion and lease reinstatement because it recognized that "agencies may not use

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          10

error correction 'as a guise for changing previous decisions' based on policy preferences." Op. at 18 (quoting *Am. Trucking Ass'ns,* 358 U.S. at 146). The Court considered whether the agency's invocation of inherent reconsideration authority was appropriate to correct a purported "legal error" in the interpretation of the leases, but found in examining the Administrative Record submitted by Federal Defendants there was "no evidence that establishes this reversal was policy-based." *Id.*

Plaintiffs recently learned of documents demonstrating that the 2018 Reversal was driven by policy pressure in favor of the Twin Metals' project. Prior to the summary judgment decision, Interior provided the documents to unrelated third parties in response to those parties' Freedom of Information Act ("FOIA") Requests. Interior did not include these documents in the Administrative Record or bring them to Plaintiffs' attention, despite the fact that agency decisionmakers clearly considered them in reaching the challenged decisions, and despite the Court's order of February 8, 2019 requiring Federal Defendants to include in the Administrative Record documents relating to meetings with Twin Metals or its counsel.

Federal Rule of Civil Procedure 60(b) empowers this Court to "relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b). To obtain relief, the movant must show that "(1) [t]he evidence must have been in existence at the time of trial, (2) [t]he evidence . . . was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding, (3) the evidence must not be merely cumulative or impeaching, and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome. *Canady v. Erbe Elektromedizin GmbH*, 99 F. Supp. 2d 37, 44

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                11

(D.D.C. 2000) (quoting *In re Korean Air Lines*, 156 F.R.D. 18, 22 (D.D.C. 1994)). Each of these

circumstances exists here.

## I.      The Documents Existed at the Time of the Summary Judgment Decision.

The first prerequisite for relief under Rule 60(b) can be summarily addressed, as the

documents are correspondence exchanged in 2017. They existed at the time of the Court's 2020

summary judgment decision.

## II.     Plaintiffs Did Not Discover and Through the Exercise of Due Diligence Could Not Have Discovered the Documents in Time to Present Them in the Original Proceeding.

The documents are evidence that was "newly discovered" by Plaintiffs, who did not

know of them until after the Court entered judgment. *Supra* p. 6. They were posted to the

Internet by non-parties unaffiliated with Plaintiffs, who obtained the documents through FOIA

Requests. (Ward Decl. ¶¶ 3, 5.) The documents' omission from this case was not the result of

Plaintiffs' lack of diligence. To the contrary, Federal Defendants had an obligation to include

these documents in the Administrative Record. *Fund for Animals v. Williams*, 245 F. Supp. 2d

49, 55 (D.D.C. 2003), *vacated sub nom. Fund For Animals, Inc. v. Hogan*, 428 F.3d 1059 (D.C.

Cir. 2005) ("[C]ourts in this circuit have directed agencies to collect those materials 'that were

compiled by the agency that were before the agency at the time the decision was made.'") (citing

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *Common Sense Salmon*

*Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002)). Federal Defendants instead concealed

these documents from Plaintiffs, although they released the same documents in response to

unaffiliated non-parties' FOIA requests. Further, Plaintiffs and their counsel submitted multiple

FOIA requests to the Department of the Interior in 2018 and 2019 seeking documents relating to

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    12

the 2018 Reversal, but none of those requests yielded the documents referred to here as Exhibits A–I. (Ward Decl. ¶ 7.)

Some of the documents constituting new evidence pertain to meetings between Twin Metals and Federal Defendants and are the very types of documents Plaintiffs requested that the government search for and include in the administrative record during initial exchanges about the adequacy of the record prepared by the government. Plaintiffs first asked the government, on November 8, 2018, to include in the administrative record "[a]ny documents related to any meetings between Department of Interior staff and Twin Metals, Antofagasta, Duluth Metals, INCO, the American Copper and Nickel Company, or counsel for those entities pertaining to the leases". Dkt. 56-13. Federal Defendants responded that they had "already included documents related to these meetings that were considered in reaching the challenged decisions (*see*, *e.g*., BLM000679)," but were "willing to take another look and see if we find anything else . . . ." Dkt. 56-14. Not long after, the federal government shut down and the case was stayed. Dkts. 50, 51; Minute orders of Jan. 2, 2019 & Jan. 29, 2019. Federal Defendants' unfulfilled agreement to search for these meetings documents and other outstanding record issues lingered after the federal government shutdown ended. Federal Defendants thus stipulated to "supplement the Administrative Record with any documents relating to meetings between Department of the Interior and/or Bureau of Land Management staff and Twin Metals, Antofagasta, Duluth Metals, and/or any of their predecessors that were considered directly or indirectly by the agencies, and therefore should be in the Administrative Record, as discussed by the Parties" and other documents by February 15, 2019. Dkt. 52-1. The Court ordered they do so. Dkt. 53 at 1. Nonetheless, Federal Defendants did not include in their February 15, 2019 record supplement, or in any prior version of the administrative record, documents related to meetings or

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                13

communications with Twin Metals or its representatives from WilmerHale, including the emails and attachment in Exhibit A; the emails and attachment in Exhibit B; the emails in Exhibit E; the emails in Exhibit F and the attachment at p. 18 of Exhibit F.

In the exercise of reasonable diligence, Plaintiffs were entitled to assume that Federal Defendants had complied with the Court's order to include these meeting-related documents. Indeed, other than the previously-mentioned FOIA requests which did not yield the documents, Plaintiffs had no way to independently verify that Federal Defendants complied with the order and no reason to expect any omitted documents would surface on the Internet at a later date.

Had Federal Defendants provided to Plaintiffs the documents regarding meetings between Federal Defendants and Twin Metals, Plaintiffs would have learned that members of Congress were also actively pressuring Interior to reinstate Twin Metals' leases, and could have requested that the agency include the requisite documents on that subject. *See* Ex. B at 1 (Twin Metals' lobbyist from WilmerHale, writing to Interior staff, "Thanks again for the time yesterday. Attached, you will find the latest letter from Rep. Emmer to Secretary Zinke."); *id.* at 3-4 (attaching a letter from Representative Emmer urging the Secretary to reject the Tompkins M-Opinion). The Bureau omitted this evidence of political pressure pertaining directly to the challenged decisions, even as it supplemented the administrative record with a letter from the same representative about a Forest Service decision that is not at issue in this case. BLM-005548; Dkt. 55 (Federal Defendants explaining that they included BLM-005548 as part of their effort to provide documents relating to meetings between Twin Metals and Interior). As with the documents related to meeting with Twin Metals, Plaintiffs were entitled to expect the Bureau would include letters from Members of Congress pressuring the agency to reverse the Tompkins M-Opinion or reinstate Twin Metals' leases, or regarding meeting with the agency to advance

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    14

their policy preferences specific to those topics, such as Exs. C, D, and G. Plaintiffs and their counsel had no way to independently verify the agency had fulfilled this obligation.

All the exhibits described in this motion were before agency decision makers at the time of the 2018 Reversal. The policy pressure went to the highest levels of the agency, including to Secretary Zinke and his staff, Exs. B, D, in a series of meetings that occurred prior to the 2018 Reversal.

This is not a situation where the documents were known to Plaintiffs. *See Bain v. Jackson*, No. CV 09-826 (RCL), 2012 WL 13065672, at *2 (D.D.C. June 7, 2012), *aff'd sub nom. Bain v. MJJ Prods., Inc.*, 751 F.3d 642 (D.C. Cir. 2014) (denying Rule 60(b)(2) motion because "plaintiffs were fully aware of the evidence during the litigation"). Instead, Federal Defendants hid the documents' existence from Plaintiffs.

## III.   The Documents Are Admissible, Non-Cumulative, Non-Impeaching, and Would Have Changed the Outcome.

The Court's opinion denying Plaintiffs' motion for summary judgment agreed with Plaintiffs on an issue of law: "agencies may not use error correction 'as a guise for changing previous decisions' based on policy preferences." Op. at 18 (quoting *Am. Trucking Ass'ns, Inc.*, 358 U.S. at 146). The Court, however, concluded that there was no evidence of a policy motivation for the 2018 Reversal.

The new documents demonstrate such a policy-based motive and thus are "of such a material and controlling nature as will probably change the outcome." *Canady*, 99 F. Supp. 2d at 44 (quoting *In re Korean Air Lines*, 156 F.R.D. at); *see id.* at 47 n.20 (granting a rule 60(b) motion where the court could not say the new evidence would not have changed the decision, but expressing no opinion as to whether the new evidence "will, in fact" change the decision). They

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    15

reflect that Interior staff in the new administration faced almost immediate pressure from Twin Metals and Members of Congress to reverse the 2017 Renewal Rejection to advance a pro-mining policy agenda. *See* Ex. A at 4 ("jobs, the economy, and the recovery of strategic national resources"); Ex. B at 3 ("Intermittent interruptions in leaseholds will damage any plans to establish projects in Minnesota and severely impact future investments into the state."). This initial pressure campaign culminated in the Solicitor of the Interior's Office preparing an April, 2017 "options" memorandum for reversing the lease denial. *See infra* p. 7. There is no evidence in the administrative record that the Bureau believed the Tompkins Opinion included any legal error that precedes the "options" memorandum.

The new documents also show that pressure from Twin Metals and Congress continued until shortly before Federal Defendants issued the Jorjani M-Opinion. *See* Ex. G at 1-2 (letter on behalf of Members of Congress pressuring Interior to adopt pro-mining policies, including renewing Twin Metals' leases and reversing the Tompkins M-Opinion, dated October 26, 2017, and including fifteen hyperlinks to related external resources). They also show that Interior staff expressly requested "policy direction" on the Jorjani M-Opinion.  *See* Ex. H. And they show that reversing the agency's decision not to renew Twin Metals' leases was part of a broader pro-mining policy campaign that included drafting legislation, on which Interior itself agreed to provide "technical assistance," that could make lease renewals "automatic in Minnesota if the company applies" in an effort "trying to address" the rejection of Twin Metals' leases. *See* Ex. I. In assessing the parties' cross-motions for summary judgment, the Court referred to a lack of evidence that the challenged decisions were motivated by policy, rather than legal error. Op. at 18. These newly discovered documents show both policy-based pressure and Federal Defendants' express consideration of policy matters, and are therefore not cumulative.

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    16

For the same reasons, the documents are admissible. 12 Moore's Federal Practice §
60.42[6] ("The requirements that newly discovered evidence must be both admissible and
credible would seem self-evident."). These documents are part of the "whole record" to be
reviewed by this Court. 5 U.S.C. § 706. The review is to "be based on the full administrative
record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton
Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds Califano v. Sanders*,
430 U.S. 99, 97 (1977). The record "must include all documents and materials that the agency
'directly or indirectly considered.'" *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C.
2006) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993); *Amfac Resorts,
LLC v. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001); *Novartis Pharms. v. Shalala*, No.
CIV. A. 99-323, 2000 WL 1769589, at *2 (D.D.C. Nov. 27, 2000); *Alaska Excursion Cruises v.
United States*, 603 F. Supp. 541, 550 (D.D.C. 1984). The newly discovered documents belong in
the administrative record.

Although an agency's preparation of the administrative record is entitled to a
presumption of regularity, the "agency may not skew the record in its favor by excluding
pertinent but unfavorable information." *Maritel*, 422 F. Supp. 2d at 196 (citing *Envtl. Def. Fund
v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978). "Nor may the agency exclude information on the
grounds that it did not 'rely' on the excluded information in its final decision." *Maritel*, 422 F.
Supp. 2d at 196 (citing *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C.
2002)).

This Court has recognized that "supplementation [of the record] might be required if
petitioners made a prima facie showing that the agency excluded from the record evidence
adverse to its position or that the agency's stated rationale is but a pretext masking the true basis

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    17

of its decision." *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986) (quoting *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1227 (D.C. Cir. 1984), *aff'd*, 760 F.2d 1320 (D.C. Cir. 1985) (en banc)).

The documents here were indisputably before the agency in considering the 2018 Reversal. They include letters to the agency that the agency responded to and reflect meetings during the nine months preceding issuance of the Jorjani M-Opinion in December, 2017. They reflect policy pressure imposed on key decision makers such as Interior Secretary Zinke. Exs. B, D. They demonstrate that the process of reversing the lease denial was initiated by preparation of an "options" memorandum by the Solicitor's office for the Interior Secretary in April, 2017, after Members of Congress and the mining company began pressuring Interior to change course. *See* Exs. A, B, C; Ex. F at 2; Ex. E at 2. They show that Members of Congress made specific policy requests, including "[a] reversal of the [Tompkins] M-Opinion," and provided resources to support their pro-mining policy positions to staff within the Secretary's office. Ex. G. They show that Interior staff sought policy guidance as part of the preparation of the Jorjani opinion. Ex. H. And they show that the policy pressure was specific: every document pertains to reversing the decision to not renew Twin Metals leases because of policy considerations such as purported benefits of mining. The documents are thus "pertinent" to Interior's decision and were inappropriately excluded from the administrative record. *See Maritel*, 422 F. Supp. 2d at 196 (rejecting that agency may exclude "unfavorable" pertinent documents); *Heckler*, 653 F. Supp. at 1237 (stating documents should be included in the record upon a showing they are adverse to the agency's stated rationale).

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          18

Accordingly, the documents should be included in the administrative record, and the judgment regarding Plaintiffs' claim that the Bureau could not rely on error correction authority to support the 2018 Reversal should be reopened.

## CONCLUSION

For the foregoing reasons, Plaintiffs jointly request that the Court consider this Motion, and indicate its intent to grant relief from the judgment so the case may be remanded from the Court of Appeals.

Respectfully submitted this 30th day of November, 2020,

*s/ Erin Whalen*

*s/ Eric P. Jorgensen*

Erin Whalen (admitted *pro hac vice*)
Eric P. Jorgensen (DC Bar No. 88897)
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ewhalen@rearthjustice.org
E: ejorgensen@earthjustice.org

*Attorneys for Plaintiffs The Wilderness Society, Izaak Walton League of America, and Center for Biological Diversity in Case No. 1:18-cv-01496-TNM*

*s/ Joseph A. Ward*

Joseph Alexander Ward (DC Bar No. 463927)
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888
Telephone: 202.887.1500

*Attorneys for Plaintiffs Voyageur Outward Bound School, Piragis Northwoods Company, Inc., Ely Outfitting Company & Boundary Waters Guide Service, Wenonah Canoe Inc., Northstar Canoe, Sawbill Canoe Outfitters, Inc., Hungary Jack Outfitters, Women's Wilderness Discovery, River Point Resort and Outfitting Company, and Northeastern Minnesotans for Wilderness in Case No. 1:18-cv-01463-TNM*

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    19

*s/ Ari B. Lukoff*
_____
Richard B. Allyn (MN # 0001338) (admitted *pro hac vice*)
Stephen P. Safranski (MN #0331326) (admitted *pro hac vice*)
Ari B. Lukoff (MN #0390025) (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel.: (612)349-8500
Fax: (612)339-4181
RAllyn@robinskaplan.com
SSafranski@robinskaplan.com
ALukoff@robinskaplan.com

*s/ Meegan F. Hollywood*
_____
Meegan F. Hollywood (Dist. D.C. Bar No. NY0206)
ROBINS KAPLAN LLP
399 Park Avenue
Suite 3600
New York, NY 10022
Tel.: (212)980-7400
Fax: (212)980-7499
MHollywood@robinskaplan.com

*Attorneys for Plaintiff Friends of the Boundary Waters*
*Wilderness in Case No. 1:18-cv-01499-TNM*

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.,*
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)          20

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Joseph Alexander Ward in Support of Plaintiffs' Motion for Relief from Judgment Due to Newly Discovered Evidence, with attachments |
| 2 | Declaration of Peta Claire Barrett |
| 3 | Declaration of Ted Bell |
| 4 | Declaration of Michael Cichanowski |
| 5 | Declaration of Marc D. Fink |
| 6 | Declaration of Alison Flint |
| 7 | Declaration of Christopher Knopf |
| 8 | Declaration of Steven L. Koschak |
| 9 | Declaration of Scott Kovarovics |
| 10 | Declaration of Jack Lee |
| 11 | Declaration of Steven J. Piragis |
| 12 | Declaration of Rebecca L. Rom |
| 13 | Declaration of David Seaton |
| 14 | Declaration of Clare August Hansen Shirley |
| 15 | Declaration of Jason Zabokrtsky |

MEM. IN SUPPORT OF MOT. FOR RELIEF FROM J.
*Voyageur Outward Bound School et al. v. United States et al.*,
Case Nos. 1:18-cv-01463-TNM, 1:18-cv-01496-TNM, and 1:18-cv-01499-TNM (consolidated)                    21