UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VOYAGEUR OUTWARD BOUND SCHOOL,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** *et al.*, <br><br> Defendants, <br><br> v. <br><br> **TWIN METALS MINNESOTA LLC,** *et al.*, <br><br> Defendant-Intervenors. | Case No. 1:18-cv-01463 (TNM) |
| **WILDERNESS SOCIETY,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DEB HAALAND,**[1] *et al.*, <br><br> Defendants, <br><br> v. <br><br> **TWIN METALS MINNESOTA LLC,** *et al.*, <br><br> Defendant-Intervenors. | Case No. 1:18-cv-01496 (TNM) |

---

[1] Under Fed. R. Civ. P. 25(d), the Court substitutes Deb Haaland, the current U.S. Secretary of the Interior, for Ryan Zinke, her predecessor.

| |
|---|
| **FRIENDS OF THE BOUNDARY WATERS WILDERNESS,** *et al.*, |
| Plaintiffs, |
| v. |
| **BUREAU OF LAND MANAGEMENT,** *et al.*, |
| Defendants, |
| v. |
| **TWIN METALS MINNESOTA LLC,** *et al.*, |
| Defendant-Intervenors. |

Case No. 1:18-cv-01499 (TNM)

## MEMORANDUM ORDER

When the parties were last before the Court, it had to answer the question of when do federal agencies get a mulligan. The Court determined that the Department of the Interior "timely corrected an error that would have deprived [Defendant-Intervernors] Twin Metals of its right to valuable leases." *Voyageur Outward Bound Sch. v. United States*, 444 F. Supp. 3d 182, 204 (D.D.C. 2020). Plaintiffs now ask the Court to take a mulligan of its own. They move under Federal Rule of Civil Procedure 60(b) for relief from the Court's judgment based on newly discovered evidence. Because Plaintiffs have failed to show that the new evidence would have probably changed the outcome, the Court will deny the motion.

I.

The Court previously recounted the facts, *id.* at 187–89, so here it provides only what is necessary and what is new.

2

Twin Metals sought to renew two mining leases with Interior. *Id.* at 188. Interior denied the request, relying on a legal opinion ("Tompkins Opinion") that concluded that renewal was not automatic and instead required the consent of the Secretary of Agriculture. *Id.* The Secretary refused, so Interior rejected the leases. *Id.* One year later—and after a change in presidential administrations—Interior rescinded the Tompkins Opinion and issued a new one. *Id.* The new "Jorjani Opinion" concluded that the Tompkins Opinion misapplied contract law and misinterpreted the leases, which should have been renewed automatically at Twin Metals' request. *Id.* After Interior reinstated the leases, Plaintiffs sued, claiming that Interior's reversal violated the APA and various statutes.[2] *Id.* at 188–89. The Court disagreed, ruling that Interior had inherent authority to reconsider its decision within a reasonable time, which it lawfully did based on "thorough, thoughtful, and reasonable" analysis. *Id.* at 204.

Plaintiffs appealed the Court's March 2020 order. *See* Notices of Appeal, ECF Nos. 83, 85, 86. At some point before November 2020—at a time left unclear by the briefing[3]—Plaintiffs learned that unaffiliated third parties posted documents relevant to this case on the internet. Ward Decl. ¶¶ 3–7. Plaintiffs and their counsel were previously unaware of the records, *see*

---

[2] The Court consolidated all three cases and permitted Twin Metals and Franconia Minerals (collectively, "Twin Metals") to appear as Defendant-Intervenors. *See* Minute Order (July 25, 2018); Minute Order (June 28, 2018).

[3] Plaintiffs say when third parties obtained documents by FOIA requests. *See* Pls.' Mot. for Relief from J. Due to Newly Discovered Evidence ("Mot.") Ex. 2 ("Ward Decl.") ¶¶ 3, 5, ECF No. 91-2. And the parties appear to agree that some documents appeared online by late December 2019, some by late March 2020, and one document no earlier than May 2020. *See id.*; Pls.' Reply in Supp. of Their Mot. for Relief from the J. Due to Newly Discovered Evidence ("Reply") at 8, ECF No. 100. But Plaintiffs do not share when *they* first learned of the documents' existence. Rather, they explain that "in the months after the entry of judgment, [Plaintiffs] reviewed thousands of pages of documents and ultimately identified the exhibits." Reply at 8; *see also* Ward Decl. ¶ 4. The exact timing is immaterial for today's purposes, but the Court finds the reticence perplexing.

Mot. Exs. 12–25,[4] which were retrieved through FOIA requests filed by third parties, Ward Decl. ¶¶ 3, 5, 7. Plaintiffs now submit nine documents to the Court. *See* Mot. Exs. 3–11. They contain communications from 2017 in which Members of Congress and representatives for Twin Metals highlight flaws in the Tompkins Opinion and lobby administration officials to reinstate the leases. *Id.*

With these documents in hand, Plaintiffs move under Rule 60(b) for the Court to reconsider its prior decision. Mot. at 19. More specifically, they ask the Court to "indicate" that, if the Court of Appeals remands the case, the Court will grant relief from the judgment and "reopen" the cases for reconsideration. *Id.* Both the Government and Twin Metals oppose. The Court of Appeals granted Plaintiffs' motion to hold the appeals in abeyance until this Court decides the motion for reconsideration. *See* Order of U.S. Court of Appeals, ECF No. 101.

**II.**

When a Plaintiff files a notice of appeal, jurisdiction shifts to the Court of Appeals. *See United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997). "In this situation, the district court may outright deny, but cannot outright grant, a Rule 60(b) motion." *Piper v. DOJ*, 374 F. Supp. 2d 73, 77 (D.D.C. 2005). But if the court is inclined to grant the motion, it can signal that it would grant relief, inviting remand from the Court of Appeals. *See id.*; *see also* Fed. R. Civ. P. 62.1.

When considering a Rule 60(b) motion, district courts "must strike a delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts." *Bain v. MJJ Products*, 751 F.3d 642, 646 (D.C. Cir.

---

[4] All exhibit numbers refer to the numbered attachments to the CM/ECF filings, not the title of any documents. All page citations refer to the pagination generated by the Court's CM/ECF system.

4

2014) (cleaned up). Rule 60(b)(2) provides for relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." But "the moving party must demonstrate that (1) the newly discovered evidence is of facts that existed at the time of the trial or merits proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching." *Almerfedi v. Obama*, 904 F. Supp. 2d 1, 3 (D.D.C. 2012) (cleaned up). The motion must be filed "within a reasonable time" and no more than one year after the entry of judgment. Fed. R. Civ. P. 60(c)(1); *see also Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1118 & n.5 (D.C. Cir. 2011) (discussing "reasonable time").

### III.

Defendants oppose the motion largely on two grounds: the timing and the substance of the new evidence. *See* Opp'n of Def.-Intervenors Twin Metals Minnesota LLC and Franconia Minerals (US) LLC to Pls.' Mot. for Relief from J. Under Fed. R. Civ. P. 60(b)(2) ("Twin Metals Opp'n") at 9–19, ECF No. 97 ; Federal Defs.' Opp'n to Pls.' Mot. for Relief from Final J. Under Fed. R. of Civ. P. 60(b)(2) ("Gov't Opp'n") at 9–12, ECF No. 98. To expeditiously resolve the motion, the Court will not consider the timing; the Court will assume that Plaintiffs were justifiably ignorant of the existence of the documents and were diligent enough in both locating them and filing the motion. *See Almerfedi*, 904 F. Supp. 2d at 3.

That leaves the effect of the new evidence. The motion fails because Plaintiffs have not shown that the new material is "of such importance that it probably would have changed the outcome" of the Court's decision. *Id.* The Court is confident that these documents would not have tipped the scales.

5

As they did in their motion for summary judgment, Plaintiffs contend that Interior's reversal was merely a pretext for a change in policy. Mot. at 15. And they note that the Court dismissed this line of argument before because—beyond the reversal coinciding with a change in presidential administrations—there was "no evidence at all" that Interior's reconsideration stemmed from shifting policy. *Voyageur*, 444 F. Supp. 3d at 197. Now armed with some evidence, Plaintiffs try again.

But they still lack a winning argument. Plaintiffs cling to one line from the Court's prior opinion, in which it noted generally that "agencies may not use error correction 'as a guise for changing previous decisions' based on policy preferences." *Voyageur*, 444 F. Supp. 3d at 196 (quoting *Am. Trucking Ass'ns, Inc. v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958)). Plaintiffs overread this general statement and its citation to *American Trucking*.[5] The Court meant that an agency may not rely on its inherent authority to correct errors when it really wishes to reverse course based only on shifting policy. The Court did not mean that policy considerations can in no way catalyze a second look.

So when can policy preferences motivate a reconsideration in this context? Courts have rejected reconsideration in the name of error correction where the sole motivation was a policy reversal. *See McAllister v. United States*, 3 Cl. Ct. 394, 402 (1983) (rejecting reconsideration where "the sole basis for the reversal . . . was that the agency decided to change its official

---

[5] *American Trucking* addressed an agency's "power to correct inadvertent ministerial errors" despite a statute requiring finality in that agency's administrative process. 358 U.S. at 146. The ministerial error doctrine does not apply here, as Interior's reconsideration relied instead on the broader, inherent authority to undertake "substantive reconsideration." *Voyageur*, 444 F. Supp. 3d at 191. So the precise language of *American Trucking*'s cautionary dicta about policy changes disguised as error correction is not controlling. Other authorities in the ministerial-error line of cases are similarly helpful but do not control. *See* Reply at 10–11.

mind"); *Chapman v. El Paso Natural Gas Co.*, 204 F.2d 46, 53–54 (D.C. Cir. 1953) ("[A] decision may not be repudiated for the sole purpose of applying some quirk or change in administrative policy . . . ."); *see also Coteau Properties Co. v. Dep't of Interior*, 53 F.3d 1466, 1478 (8th Cir. 1995) (invalidating agency reversal based on "changing policies" where agency failed to undertake necessary procedural steps); *see generally* Daniel Bress, *Administrative Reconsideration*, 91 VA. L. REV. 1737, 1752–53 (2005) (collecting cases).

On the other hand, political pressure *triggering* a review is not, by itself, enough to invalidate a reversal.[6] Consider *Belville Mineral Company v. United States*, in which the Sixth Circuit allowed Interior to reverse a decision that a company held certain mining rights because Interior's prior determination resulted from "wholly inadequate" and "legally erroneous" analysis. 999 F.2d 989, 999 (6th Cir. 1993). While "recogniz[ing] that a Congressional investigation, at least in large measure, was the catalyst for reconsideration," the court upheld Interior's reversal as one of error correction. *Id.* at 998.[7]

---

[6] Indeed, courts expect as much from the Government in other contexts, such as the shifting legal positions of the U.S. Solicitor General's Office before the Supreme Court. The Office has conspicuously changed positions repeatedly this year with the arrival of a new presidential administration. *See, e.g.*, Letter of respondent United States, *Terry v. United States*, No. 20-5904 (U.S. March 15, 2021); Letter of respondents United States, et al. notifying the Court of the federal government's change in position from that presented in its brief on the merits filed in these cases, *California v. Texas*, No. 19-840 (U.S. Feb. 10, 2021); Letter from the Acting Solicitor General notifying the Court of the United States' change in position from that presented in its amicus brief filed on January 7, 2021, *Cedar Point Nursery v. Hassid*, No. 20-107 (U.S. Feb. 12, 2021). While considerations of politics and public policy no doubt played a role in the about-faces, that does not necessarily mean that the Government changed course without *also* having a good-faith legal basis. *See generally* Michael R. Dreeben, *Stare Decisis in the Office of the Solicitor General*, Yale L.J. Forum 541 (2021); Josh Blackman, *Presidential Maladministration*, 2018 U. ILL. L. REV. 397, 405–22 (2018).

[7] Or take one of the seminal cases in this circuit to address agencies' inherent reconsideration authority: *Ivy Sports Medical, LLC v. Burwell*, 767 F.3d 81 (D.C. Cir. 2014) (Kavanaugh, J.). There FDA sought to reclassify a medical device after the initial classification "came under fire in the press and from some Members of Congress amid allegations that the process had been

What matters, then, is that reconsideration cannot be a pure policy reversal masquerading as error correction. Reviewing courts must consider the totality of circumstances, as Plaintiffs acknowledge. *See* Reply at 15. But they also must presume that agencies have properly discharged their official duties unless there is "clear evidence to the contrary." *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011) (cleaned up). The Court recognized as much in its prior opinion, *see Voyageur*, 444 F. Supp. 3d at 197, and Plaintiffs accept that the presumption applies to Interior's reconsideration decision, *see* Reply at 10. Interior properly discharging its duties here means using its inherent reconsideration authority to correct an error, not just as a shortcut to a newly preferred policy outcome.

Against this presumption, Plaintiffs bring their new evidence—claiming that it "probably would have changed the outcome" of the case. Reply at 14–15. But what does the new evidence show? Unsurprisingly, the parties disagree. *Compare* Mot. at 15–18, *with* Twin Metals Opp'n at 17–19, *and* Gov't Opp'n at 9–12. According to Plaintiffs, the documents show that "Twin Metals and Members of Congress launched a campaign of policy-based pressure to undo the 2016 Renewal Rejection" and trigger "the 2018 Reversal" to promote mining interests. Mot. at 6–7.

*First*, this is not entirely correct, as some of the so-called pressure focused not on the adverse policy ramifications of Interior's initial decision but on the *legal* deficiencies of the Tompkins Opinion. Representative Emmer, for example, suggested that the Tompkins Opinion granted authority without necessary statutory authorization. *See* Mot. Ex. 4 at 3, ECF No. 91-4.

---

tainted by" backdoor lobbying. *Id.* at 82. The court rejected FDA's reliance on its inherent reconsideration authority because there was a "specific statutory mechanism to correct alleged device classification errors," thereby preempting ad hoc reconsideration. *Id.* at 86. But the court did not suggest that the existence of pressure from lawmakers to restart the classification process locked FDA into its original decision and prohibited any form of reconsideration.

And representatives of Twin Metals pressed that the Tompkins Memo was "both *legally erroneous* and predicated on a fundamental misunderstanding of the policy considerations and factual background." Mot. Ex. 8 at 19, ECF No. 91-8 (emphasis added); *see also id.* at 1–3 (correspondence transmitting memo containing legal arguments and scheduling meetings to discuss). That Twin Metals also highlighted purported negative, real-world implications of the Tompkins Memo did not irrevocably poison the well for Interior to reconsider the memo's legal analysis, which it ultimately agreed was flawed.

*Second*, even if third parties had solely policy-based reasons for urging Interior to reconsider, that far from proves that Interior's ultimate decision was not a good-faith exercise in error correction. Along with the presumption of regularity, *see Latif*, 677 F.3d at 1178, the Court considers Interior's stated justification for its reconsideration. The Jorjani Opinion comprehensively interprets the leases and the applicable regulations anew, and it catalogs the Tompkins Opinion's errors. Joint App'x ("J.A.") at 21–32, ECF No. 73. After its own review of the underlying legal issues, the Court found the 19-page opinion to be "thorough, thoughtful, and reasonable." *Voyageur*, 444 F. Supp. 3d at 204.

More, the Jorjani Opinion adopted some of the legal analysis promoted by Twin Metals and Members of Congress but ignored other points, including Representative Emmer's view that the Tompkins Memo improperly granted the agency powers beyond its statutory authority. *Compare* Mot. Ex. 4 at 3, ECF No. 91-4, *with* J.A. 14–32. This nuance also suggests that the agency did not "suddenly [] reverse course or reach a weakly-supported determination" in a way that the Court "might infer that pressure did influence the final decision." *ATX, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1529 (D.C. Cir. 1994) (upholding administrative adjudication despite pressure from legislators aimed at influencing agency's actions). Interior's review

process took several months and followed all mandated procedures, producing a "well-reasoned and well-supported" explanation of the agency's changed position. *Voyageur*, 444 F. Supp. 3d at 201; *cf. Coteau Properties*, 53 F.3d at 1478 (invalidating agency reversal after change in administration where agency made "no pretense of applying . . . the deferential standard of review mandated by [its] own regulations").

Plaintiffs have moved the needle from "no evidence" to "some evidence." But they are still far from submitting the "clear evidence" needed to surmount the presumption that Interior faithfully discharged its duties. *Latif*, 677 F.3d at 1178. The Court will not stretch to infer bad faith when case law mandates otherwise. The new evidence would not have changed the outcome in this case.

\* \* \*

For these reasons, it is hereby

**ORDERED** that the [91] Motion for Relief from Judgment is DENIED.

**SO ORDERED.**

Dated:  May 13, 2021                                            TREVOR N. McFADDEN, U.S.D.J.